CIVIL COMPLAINT FORM TO BE USED BY A *PRO SE* PRISONER

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Shawn Simms        JP4037
**Full Name of Plaintiff        Inmate Number**

v.

Secretary of the D.O.C., John Wetzel
**Name of Defendant 1**

Superintendent Mark Garman
**Name of Defendant 2**

Security Captain, R. Vance
**Name of Defendant 3**

Sgt. Roberts
**Name of Defendant 4**

Unit Manager, S. Pasquale
                              et al
**Name of Defendant 5**
(Print the names of all defendants.  If the names of all
defendants do not fit in this space, you may attach
additional pages. Do not include addresses in this
section).

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil No. _____
(to be filled in by the Clerk's Office)

(X) Demand for Jury Trial
(__) No Jury Trial Demand

**FILED
SCRANTON**

AUG 1 0 2020

PER _____
        DEPUTY CLERK

I.    **NATURE OF COMPLAINT**

Indicate below the federal legal basis for your claim, if known.

X     Civil Rights Action under 42 U.S.C. § 1983 (state, county, or municipal defendants)

__    Civil Rights Action under Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388
      (1971) (federal defendants)

__    Negligence Action under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346, against the
      United States

Defendants continued

6. Deputy Superintendent of Centralized services, Morris, L. Houser
7. Sgt. Drexler
8. Head of Activities, John Doe
9. Acting Safety Manager, D. Breese
10. Chief Grievance officer, Keri Moore
11. Unknown Number of Unknown Correctional Officers
12. Major of Unit Management, Major H. Haldeman
13. Unknown Employees of the Bureau of Health Care Services
14. CHCA, Richard Ellers
15. Dr. Dancha
16. Unknown Security Lt.
17. Two Unknown Shakedown Officers
18. Grievance Coordinator N. Paul
19. Lt. R. Potts
20. Unknown Medical Staff Member of Rockview
21. EDS, Tabb Bickle
22. PA, Ethan Ernst
23. Medical Director, Dr. Preston
24. Unknown Mailroom Employee
25. Mailroom Supervisor, S. Boone
26. Correctional officer Cummings
27. Correctional officer Pollock
28. Correctional Officer Showers
29. Lt. Rutherford
30. Timothy Miller
31. C. Byerlee
et. al.
"Under color of State law"

Individually and in their Officail capacity

II.      ADDRESSES AND INFORMATION

A.      PLAINTIFF

Simms          Shawn   M
Name (Last, First, MI)

J P 4037
Inmate Number

S.C.I. Rockview
Place of Confinement

Box A
Address

Bellefonte, PA. 16823.
City, County, State, Zip Code

Indicate whether you are a prisoner or other confined person as follows:

___      Pretrial detainee
___      Civilly committed detainee
___      Immigration detainee
X        Convicted and sentenced state prisoner
___      Convicted and sentenced federal prisoner

B.      DEFENDANT(S)

Provide the information below for each defendant. Attach additional pages if needed.

Make sure that the defendant(s) listed below are identical to those contained in the caption.   If incorrect information is provided, it could result in the delay or prevention of service of the complaint.

Defendant 1:

Vetzel, John
Name (Last, First)

Secretary of the D.O.C.
Current Job Title

1920 Technology Parkway
Current Work Address

Mechanresburg, PA. 17050
City, County, State, Zip Code

Defendant 2:

Garman, Mark
Name (Last, First)

Superintendent at S.C.I. Rockview
Current Job Title

BOX A
Current Work Address

Bellefonte, PA. 16823
City, County, State, Zip Code


Defendant 3:

Vance, R.
Name (Last, First)

Security Captain at SCI Rockview
Current Job Title

Box A
Current Work Address

Bellefonte, PA. 16823
City, County, State, Zip Code


Defendant 4:

Roberts, ?
Name (Last, First)

Sgt  at SCI Rockview, CB-unit
Current Job Title

Box A
Current Work Address

Bellefonte, PA. 16823
City, County, State, Zip Code


Defendant 5:

Pasquale, S
Name (Last, First)

Unit Manager at SCI. Rockview, C-unit
Current Job Title

Box A
Current Work Address

Bellefonte, PA. 16823
City, County, State, Zip Code

Part B. Defendants Continued:

Defendant 6
Houser, Morris L.
Deputy Superintendent of Centralized Services at SCI Rockview
Box A
Bellefonte, PA. 16823

Defendant 7
Drexler, ?
Sgt. at SCI Rockview
Box A
Bellefonte, PA. 16823

Defendant 8
Doe, John
Head of Activities at SCI Rockview
Box A
Bellefonte, PA. 16823

Defendant 9
Breese, D
Acting Safety Manager at SCI Rockview
Box A
Bellefonte, PA. 16823

Defendant 10
Moore, Keri
Chief Grievance officer of the D.O.C.
1920 Technology Parkway
Mechanicsburg, PA. 17050

Part B. Defendants continued.

- Defendant 11
  Unknown
  Correctional officers at Rockview
  Box A
  Bellefonte, PA. 16823

- Defendant 12
  Haldeman, H.
  Major of Unit management at SCI Rockview
  Box A
  Bellefonte, PA. 16823

- Defendant 13
  Unknown
  Employee of the Bureau of Health care Services of the Doc
  1920 Technology Parkway
  Mechanicsburg PA. 17050

- Defendant 14
  Ellers, Richard
  CHCA at SCI Rockview
  Box A
  Bellefonte, PA. 16823

- Defendant 15
  Drancha, ?
  Doctor at SCI Rockview
  Box A
  Bellefonte, PA. 16823

pg 2

Part B. Continued  Defendants

- Defendant 16
  Unknown
  Security Lt. at SCZ Rockview
  Box A
  Bellefonte, PA. 16823
- Defendant 17
  Unknown
  Shakedown Correctional officers at Rockview
  Box A
  Bellefonte, PA. 16823
- Defendant 18
  Paul, N
  Grievance Coordinator at SCZ Rockview
  Box A
  Bellefonte, PA. 16823
- Defendant 19
  Potts, R,
  Lt. at SCZ Rockview
  Box A
  Bellefonte, PA. 16823
- Defendant 20
  Unknown
  Medical Staff member at SCZ Rockview
  Box A
  Bellefonte, PA. 16823

Part B. Defendants continued.

- Defendant 21
  Bickle, Tabb
  EDS of D.O.C. Central Region
  1920 Technology Parkway
  Mechanicsburg, PA. 17050
- Defendant 22
  Ernst, Ethan
  PA at SCI. Rockview
  Box A
  Bellefonte, PA. 16823
- Defendant 23
  Preston, ?
  Doctor / Medical Director at SCI Rockview
  Box A
  Bellefonte, PA. 16823
- Defendant 24
  unknown
  Mailroom Employee at SCI Rockview
  Box A
  Bellefonte, PA. 16823
- Defendant 25
  Boone, S.
  Mailroom Supervisor at SCI Rockview
  Box A
  Bellefonte, PA. 16823

Part B. Defendants continued:

Defendant 26
Cummings, ?
Correctional officer at SCI Rockview on CB block
Box A
Bellefonte, PA. 16823

Defendant 27
Pollock, ?
Correctional Officer at SCI Rockview on CB block
Box A
Bellefonte, Pa. 16823

Defendant 28
Showers, ?
Correctional officer at SCI Rockview on CB block
Box A
Bellefonte, Pa. 16823

Defendant 29
Rutherford, ?
Lt. at S.C.I. Rockview
Box A
Bellefonte, PA. 16823

Defendant 30
Miller, Timothy
CCPM/PCM at S.C.I. Rockview
Box A
Bellefonte PA. 16823

Part B. Defendants Continued:

Defendant 31
Byerlee, C
Psych at SCI Rockview
Box A
Bellefonte, PA. 16 823

III.   **STATEMENT OF FACTS**

State only the facts of your claim below. Include all the facts you consider important. Attach additional pages if needed.

A.   Describe where and when the events giving rise to your claim(s) arose.

Down Stairs Activities weight room during the late afternoon session, On CB Housing Unit during morning meal line, On CB Housing Unit in the morning, On CB Housing Unit in the evening and the next morning, On CB Housing Unit in the

B.   On what date did the events giving rise to your claim(s) occur?

1-16-19, 1-20-19, 1-20-19, 1-21-19, 1-22-19, 2-4-19, 2-6-19, 2-14-19, 6-4-19, 7-5-19, 7-12-19, 9-4-19, 9-18-19, 4-6-20, 6-24-20

C.   What are the facts underlying your claim(s)? (For example: What happened to you? Who did what?)

1.   On 1-16-19 I was exercising in the downstairs weight room. When I was finished working out, I returned the six 100 Lb. weight plates I was using to their designated storage rack. When I put the last plate on the rack, the whole rack and all the weights fell on me and fractured the fifth metatarsal of my right foot because the rack wasn't bolted to the floor like it was designed to be.

2.   The acting Safety Manager, D. Breese, had the power and obligation to properly install the racks in the weight room. In his answer to my grievance, he indicated that he would "look into" securing the racks to the floor but hasn't done so.

3.   On both appeals, the facility Manager, Mark Garman, and the Chief Grievance Officer Keri Moore, were informed of the situation but choose not to fix the problem.

4.   On 1-18-19, I went to sick call (medical) and had my foot x-rayed. It was confirmed that my fifth metatarsel on my right foot was fractured and I was sent out to see the Orthopedic surgeon. I was placed in a cast and issued a "non-load

# Statement of Facts

Part A. continued:

morning, On CB Housing Unit in the morning, On CB Housing Unit in the morning, On CB Housing Unit in the morning, On CB Housing Unit in cell 257 in the evening, On CB Housing Unit in cell 257 in the morning, On CB Housing Unit in cell 152 in the afternoon, In Rockview mailroom at on unknown time of day, On G-block in treatment room in afternoon, In G-block Cell C-11 at night

Part C continued:

bearing" order for my foot. Upon arrival to the jail, I was issued crutches by Rebecca Cox, and was sent back to my block. I resided on CB Unit, Cell 1028, bed 2 (top bunk).

5.    On 1-20-19, when "diet, cane, and crutch" line was called to go eat breakfast, I attempted to travel to the chow hall on one foot (the other was in a cast), and crutches. The walkways had ice and snow on them posing obvious traction problems thus, making my travels perilous and would risk further injury. I turned around and went back into my Housing Unit and asked Sgt. Roberts to have my tray delivered to the block to avoid injuring myself by slipping on the ice and snow. Sgt. Roberts (who was in the company of other unknown correctional officers) told me to go get my own tray or don't eat.

6.    On my grievance, Unit manager, S. Pasquale, turned a blind eye to my problem and said that I should've traveled to the culinary building myself despite the snow and ice.

7.    On appeal, the facility manager, Mark Garman, said that there are workers that shovel and salt the walkways and I was able to go to the culinary building. The workers are let

Part C Continued:

out to shovel at the same time that I'm supposed to go to the culinary building, So the walkways were not yet treated. Mark Garman choose to do nothing to solve the problem.

8.    On final appeal, the chief grievance officer, Keri Moore, said that I choose not to eat and she did nothing to help despite having the power to do so.

9.    On 1-20-19, I asked Sgt. Roberts (who was in the company of other unknown correctional officers) to go to medical due to the severe pain the crutches were causing me and because they were rubbing the skin off of my hands. He responded by saying, "If you keep asking to go to medical, I'll send you to the TBO." The TBO AKA "Suicide watch" is a place where they take away all of your clothes, give you a blanket, and put you in a cell with a camera inside of it. He threatened to falsify a report to get me and my property removed from the block and suffer all the "Dominoe effect" inconveniences that come with it. I had to call my wife, Brenda Marinos, and have her call the jail's medical department from the outside. When she told medical what was going on, Medical called my Housing Unit and ordered me to the medical building.

10.    In the initial grievance responce, Unit Manager, S. Pasquale, says that I wasn't denied medical services and he did nothing to correct an ongoing problem I was having with a staff member under his command.

11.    On appeal, the facility manager, Mark Garman, isn't even on topic so it's impossible for him to have even read the grievance, let alone "investigate" it.

pg 2

Part C Continued.

12. On final appeal, the chief grievance officer Keri Moore, doesn't answer one point of my appeal and says I wasn't denied medical services.

13. On 1-20-19, medical called my housing unit and requested me to go to the medical building to be evaluated.

14. Upon evaluation, It was determined that I needed a wheelchair to ease the problems the crutches were causing me (severe pain and rubbing the skin off of my hands) and to solve the issue of traveling over ice and snow. A cane was also prescribed to help with balance. J. Corl RN was the person who prescribed the wheelchair and cane to me and also called the block to have someone come and push me.

15. On 1-21-19, I was attempting to attend my "activities" pass. After I got my pass signed, my pusher was pushing me off of the block when the front door officer (unknown officer) stopped us because my pusher didn't have a pass.

16. My pusher went to Sgt. Drexler (whom was in the company of other unknown officers) to get a handwritten yellow pass to push me to my callout (this is common procedure). Sgt. Drexler refused to write my pusher a pass and also banned him from pushing me ever again.

17. I was forced to travel to and from chow, up and down steps (pulling my wheelchair up the steps behind me with my cane while hopping on one foot because the other was in a cast), and go up two additional flights of steps by myself everytime the guards called me to their "bubble." Normally a pusher would do this for the person he was pushing, but

Pg 3

Part C Continued:

Since I didn't have one, I had to hop (one legged) up all these steps while Correctional officers and inmates made fun of me. At that time, I was the only one in Rockview without a pusher.

18.    Sgt. Roberts (whom was amongst other unknown correctional officers)[3] continued the "pusher ban" on me the next day.

19.    On one of my trips up the steps to the guard's "bubble," I fell and exacerbated my fractured medatarsel to where it needen several screws and a metal plate to be fixed. If I could've had a pusher, he could've went up the steps for me and avoided further injury. Since Sgt. Drexler and Sgt. Roberts prevented me from having a pusher, I had to do it myself.

20.    On the initial grievance responce, the Major of Unit Management, Major H. Haldeman, She says she found no evidence of further injury or that I was denied a wheelchair pusher.

21.    On appeal, the facility manager, Mark Garman, failed to identify ongoing problems with Unit staff and I. He says having a wheelchair pusher is not a necessity.

22.    On final appeal, the chief grievance officer, Keri Moore, says that I wasn't denied a wheelchair pusher and found no evidence that I fell.

23.    On or about 1-21-19 or 1-22-19, I went to sick call and they took x-rays of my right foot. It was confirmed that my fractured fifth medatarsal was "further displaced" and I was sent to the Orthopedic Surgeon. The Surgeon that my bone was broken so badly that it needed surgery   pg 4

Part C continued:

(several screws and a metal plate) to be corrected.

24. On or about 2-1-19, I had surgery on my right foot where four or five screws and a metal plate was permanently attached to my fifth medatarsol.

25. On or about 2-2-19, I was sent back to my block, (CB Housing Unit, Cell 102§, bed 2 [Top bunk]). After being given a medical order by Hans Reisinger allowing me to wear sweat clothes to cover the massive splint on my leg from surgery.

26. On 2-4-19, I sent my cellmate (Julius Wise) to the "bubble" to get a trash bag to cover my splint for bathing. He came back and informed me that Sgt. Roberts refused to give him a bag on my behalf.

27. I then went and spoke to Sgt. Roberts (whom was in the company of other unknown Correctional Officers)[4] about getting a bag to cover my splint. He denied my request and told me to shower with no cover or don't shower at all.

28. I don't recall whether I bathed in my cell where I could controll the flow of water better or in the actual shower on the block. In any event, the splint got wet.

29. In the initial grievance responce, Unit Manager, S. Posecole, says that I was given a way to shower without getting my cast wet by useing the shower with a bench. He claims that there are security reasons why trash bags are not given to inmates.

30. On appeal, the facility manager, Mark Garman, misses the whole point of the grievance once again. He doesn't address the officer denying me a bag to cover my splint

p55

part C continued:

despite the obvious need for one.

31. On my final appeal, the chief grievance officer, Keri Moore, Remanded the grievance back to the facility manager, Mark Garman.

32. On the remanded appeal response, Mark Garman, states all the same things but now directly addresses the grievance stating that Major Probst issued a memo stating that trash bags were not to be given to inmates unless prescribed by medical. Mark Garman offers no proof of this memo.

33. The chief grievance officer, Keri Moore, referred the final appeal to the Bureau of Health Care Services

34. Unknown employees of the Bureau of Health Care Services "Upheld in part and Denied in part" my final appeal. They didn't specify what they upheld and only stated that "no evidence of wrongdoing was identified."

35. Since I was forced to bathe without a cover on my splint, it got wet. I removed it for fear of infection from dirty "bathing water" and because I was taught that wet and dirty dressings on open wounds cause infection.

36. On 2-6-19, I asked Sgt. Roberts (whom was in the company of unknown Correctional officers)[5] to go to medical to get a new splint because the old one got wet. He told me that he would call medical and find out.

37. Later on, I came back to the desk and Sgt. Roberts informed me that he called medical. He alleges that medical told him that I wasn't scheduled for a new splint I then tell Sgt. Roberts that I just had surgery

Part C Continued:

five days ago and showed him the open wound with all the stiches. He did nothing and denied me a pass to go to medical.

38.  I then called my wife, Brenda Marinos, and told her what was going on. She called the jail and spoke to CHCA Richard Ellers whom was very upset about the facts that were laid out for him.

39.  I was immediatly called down to medical and sent out to "Ortho" for a new splint.

40.  On the initral grievance responce, Deputy Superintendent of Centralized Services, Morris L. Houser, says that he spoke with Unit Manager S. Pasquale. Mr. Pasquale says that the denial of trash bags and being forced to shower without a covering on my cast "may have occured, but he also stated there was no direction given not to allow you to use a plastic bag as a cover to protect the cast." Mr. Houser also claims to have spoken with "(PA)-Ernst." And I quote, "I (Ernst) personally spoke with security staff two days ago who stated that it is never an issue to provide a plastic bag with cast or splint in place in order to shower." That quote was from 2-6-19 so Ernst spoke to security on 2-4-19.

41.  Also in the PA's report was that I was sent to "Ortho" for re-casting. He noted that this was the third trip in three weeks. Houser says I wasn't denied acess to medical by Sgt. Roberts because I was given treatment on the same day as the incident. He doesn't address the fact that I constantly have to get a third party (outside of the jail) involved to get necessary and immediate treatment.

Pg7

Part C Continued:

42. On my appeal, the facility manager, Mark Garman, doesn't address the denial of medical services.

43. The final appeal was referred to the Bureau of Health Care Services by the chief grievance officer, Keri Moore.

44. Unknown employee's of the Bureau of Health Care Services answered my appeal by saying that there was "no evidence of wrong doing was identified."

45. On 2-14-19, I asked Sgt. Roberts (whom was in the company of other unknown Correctional officers) for a trash bag to cover my cast for a shower. He responded by saying, "I'm not giving you anything." I informed him that the last time he denied me a bag and forced me to bathe without one, it resulted in a trip to the outside hospital for emergency re-casting. "I don't care," was his response.

46. Later on that morning, I overheard Sgt. Roberts making comments and mocking gesters (wheel chair motions) about me being a white muslim in a wheelchair.

47. In the initial grievance responce, Unit Manager, S. Pasquale, contradicts himself by saying, "for security reasons" staff were directed to not give inmates bags.

48. On my appeal, the facility manager, Mark Garman, says that, "I have more concerns for an officer issuing you multiple bags which does support contraband." He says that my complaint is not supported by evidence.

49. My final appeal was referred back to Mark Garman.

50. The remanded appeal was "Upheld in part and Denied in part." It was upheld because "medical did not relay the   pg 8

Part C Continued:

information" allowing me to use bags. Denied because, "You choose to get your cast wet" which has nothing to do with the issue that was initially grieved.

51. On my final appeal, the chief grievance officer, Keri Moore, Denies my appeal in part because there is no evidence of personal hate. My appeal was upheld because medical authorized me to use bags to cover my cast.

52. On 2-15-19, I was prescribed trash bags as needed to cover my cast for showering by PA-C Ethan Ernst.

53. On 6-4-19, I prepared a feast for the day after Ramadhan to celebrate the Islamic Holiday. I bought, paid, prepared, cooked, and served the food and drinks that fed over one hundred and twenty people on my housing unit. I fed people who were hungry no matter what their race, religion, or criminal case was because it is mandatory to give charity in Islam.

54  On 6-4-19, Sgt Roberts seen me with a bag of food while handing it to another inmate in his cell. Sgt. Roberts inquired what I was doing and I told him that I was preparing a big charity to feed all (emphasis added) the hungry people on the block. He instructed me to bring the bags to him at the "bubble" and that he was writing me up. Sgt Roberts personally walked this misconduct to the shift commander and got it bumped up to a more serious "formal" hearing using his influence as a fellow staff member.

55. Inmate Darrel Holmes has resided on my block for many years and said that, "I've never seen him respond like that before."

Part C Continued:

56. I was given twenty days in the "hole," loss of job, and my custody level was raised from a two (the lowest) to a four (the highest).

57. Ultamitly, my grievance was rejected because I cannot grieve DC-ADM 801 Inmate Disipline/Misconduct procedures.

58. On 7-5-19, I resided with an unknown inmate in cell 257 on CB housing unit just after I was released from the "hole." Two unknown "shakedown" officers came into my cell and threw my property around like they were human tornadoes. In doing so, they destroyed a brand new commissary towel and damaged irreplacable photos of my dead family members. When they were finished, they left their "contraband" trash bag (They bring a trash bag with them to throw contraband into and when they are done, they take the bag with them) in my cell to send an unspoken message that this was a punitive shakedown that had nothing to do with finding contraband (the purpose of shakedowns).

59. This shakedown came after the last grievance I filed (about Sgt. Roberts personally getting his misconduct aggrevated to get me sent to the "hole.") That grievance was never officially addressed because it got rejected on the grounds of DOC Policy saying I cannot grieve misconducts. In this grievance, for the FIRST TIME (emphasis added) I said that "... over-zealous..." shakedowns will be considered retaliation on my part. Upon observation, I see that it is a common occurance for the grievance coordinator, N. Paul, to hang-out in the guard's "bubble" and converse with them after picking up the grievances from the grievance box on the block. It is my

Pg 10

## Part C Continued:

belief that she has been informing them of the contents of my grievances which is how they knew about "overzealous" shakedowns being considered as retaliation. There are too many red flags for such timeing of such a destructive shakedown to be a mere coincidence.

60. In the initial grievance response, Security Captain, R. Vance, states that I cannot prove that any damage was caused by any officers and that security doesn't keep track of grievances.

61. On my appeal, I address the security captain's with proof that he lied on official documents. The facility manager, Mark Garman, replies by saying that I can't prove anything.

62. On my final appeal, the Chief grievance officer, Keri Moore, says that I don't have evidence to substantiate my claims.

63. On 7-12-19, my wife, Brenda Marinos, came to the prison to visit me. She arrived at approx. 1050 hours. After getting scanned and processed in, she was accepted as an approved visitor and began awaiting my arrival to begin our visit at 1117 hours.

64. After waiting an hour, she asks an unknown visiting room officer why I haven't arrived yet. He responded by saying, "They (block officers) cannot locate him."

65. Sensing that something was wrong, I asked the unknown Correctional officers[7] in the "bubble" if they called me for my visit yet. I said, "She was supposed to be here an hour ago." I got a negative response. This wouldn't be the first time block officers purposely delayed calling me for a visit, but it is the most significant.

66. At 1220 hours, unknown Correctional officers called

Part C Continued:

me for a visit, but because lunch meal line was over, the walkways were closed to inmates until "count clears."

67    At approx 1330 hours, "count cleared" and I was allowed to go to my visit. My visit was maliciously cut down from five and a half hours to only two hours.

68    During my visit, I spoke to C.O. Vgov about these matters and he relayed all the same facts. I told him that I was in my cell the whole time (my cell was located only four cells away from the "bubble") so, these "facts" that he's saying are based on lies from the block officers.

69    In my initial grievance response, Lt. R. Potts said that the visiting room officer called the block Sgt. as soon as my wife came in and that "interrogating" officers is not my responsibility.

70.   On my appeal, I said that the block Sgt. (Sgt. Bloom) was on his lunch break during this time. The visiting room officer couldn't have contacted him. Secondly, DOC Policy tells inmates to take all problems to staff for resolution before fileing grievances.

71.   The facility manager, Mark Garman, says that my appeal, "has no substance,"

72.   The chief grievance officer, Keri Moore, answers my final appeal by saying there is no evidence of retaliation.

73.   On 9-4-19, I recieved a new but unknown cellmate and was ordered to sleep in the top bunk. I told the officer that I'll comply but I have hardware in my foot and it may not work out.

Pg 12

Part C Continued:

74.   I didn't want to be a "cry baby" so I muscled through the pain to get into my bed. When I came down, the pain was so intense that it triggered an involuntary bodily response and I fell off of the top bunk. My right leg suffered an injury and started to swell from the knee down. I immediatly put my shoe on my foot before my leg and foot swoll to severly, otherwise, I wouldn't be able to put my foot in my shoe. I left the shoe on untill I seen medical.

75.   I decided to leave the black officers alone because they never send me to medical anyway. So I called my wife, Brenda Marinos, and had her relay what happened to me to the medical department. When I wasn't called to medical, I called her back and she told me that an unknown medical staff member said that I have to put in a sick call slip.

76.   I was forced to wait for the sick call person to put me on the "callout" to see medical. It took two days for me to see medical.

77.   Durring these two days I couldn't utilize the top bunk. I was forced to stay awake or sleep on the floor because my cellmate had "bottom bunk" status.

78.   When I finally did see medical, the medical personal, Ethan Ernst, took one look at my foot and sent me directly to the x-ray room. When I finally took off my shoe, my foot was swollen so badly that it looked like a detailed molding of the inside of a Reebok "classic!"

79.   Mr. Ernst looked at the x-rays and determined that no bones were broken and my hardware was still in place.

pg 13

Part C Continued.

80.   Mr. Ernst made no changes to my bedding status, didn't prescribe me any medication, and gave me no treatment at all. I was told to "order tylonol from commissary" (that takes two weeks) and then sent back to the block to the exact same situation that caused me to get hurt.

81.   I wrote a request slip to medical explaining my plight and Dr. Preston responded by agreeing to the "treatment" given.

82.   I wrote five letters to various staff members and mailed them certified. The letters explained my situation and basically asked them if they agreed to the "treatment." The letters were sent to: Superintendent AKA facility manager Mark Garman, Deputy Superintendent of Centralized Services Morris L. Houser, CHCA Richard Ellers, EDS Tabb Bickle, and the Secretary of the DOC John Wetzel.

83.   Deputy Warden Houser responded by saying that medical concerns should be addressed to Mr. Ellers, Dr. Preston, or the PA's. He also reiterated what Dr. Preston said in his response to my request slip.

84.   EDS Tabb Bickle responded via Staff assistant Crystal Loy. The response said the issue wasn't his responsibility and that I should file a grievance.

85.   In the initial grievance response, CHCA Richard Ellers says that my gait was normal, my foot wasn't swollen, and there was no reason to change my bedding status. He concurred with the given "treatment."

86.   On appeal, the facility manager, Mark Garman, says that adequate medical care was provided.

pg 14

Part C continued:

87. My final appeal was referred to the Bureau of Health Care Services by the chief grievance officer, Keri Moore.

88. Unknown employee's of the Bureau of Health Care Services found "no evidence of wrong doing.".

89. As an inadvertant consequence of fileing this last grievance, I gave the black officers a way to harass me. Every cellmate that I willingly move in with was "bottom bunk" status. Meaning, they purposely put people in my cell that had "bottom bunk" status to force me to utilize the top bunk.

90. Sometime in August, my wife, Brenda marinos, sent me a letter. After not recieving it for a long time, I wrote the mail room a request slip (on 9-18-19) inquiring about my missing mail.

91. An Unknown mailroom employee at Rockview replied saying that my mail was rejected because of an incomplete return address.

92. I then wrote another request slip on 9-20-19 asking 1. why I wasn't notified of rejected mail (this is done with an "unacceptable correspondence form"), 2. How can I obtain it, and 3. the overall disposition of the missing mail.

93. An Unknown Rockview mailroom employee responded by saying, "we do not have to notify you," and that my wife should contact Smart communications.

94. DC-ADM 803 Section 1 part 2-A states that prohibited mail will not be delivered and the inmate will be issued a "Notification of unacceptable correspondence form" (Attachment 1-B) "

Part C Continued

95. No where in policy does it say that my wife has to contact smart communications.

96. I never got that piece of mail.

97. On the initial grievance review, mail supervisor, S. Boone, says that refused mail will be returned to sender.

98. My wife, Brenda Marinos, never got her letter back. The mailroom staff violated their own policy and lied about it.

99. On appeal, the facility manager, Mark Garman, denies me because the mail didn't meet specifications and smart communications holds the original. He gave me the run-around instead of fixing the problem.

100. On final appeal, the chief grievance officer, Keri Moore, doesn't fix the problem she has the power to solve. She says that the facility manager provided an adequate response. Appeal denied.

101. Since arriving in S.C.I. Rockview in 2010, I've never had a single problem with my regular mail. This tells / confirms to me that the retaliation towards me has spread to different areas in the jail.

102. Starting in January 2020 to present day, I've been seeking help from psych staff and at every turn, I've been turned away, belittled, or issued misconduct for seeking help. I've recently refused to see any medical personnel or psych ect or any administration out of fear of punishment or physical harm. Consequently, my mental health has deteriorated severely. The psych, C. Byerlee, pg 16

Part C Continued:

has been the Sole Staff member From Psych to see me and "treat" me. I have CPTSD, hyper-vigilant disorder, anxiety disorder, auditory and visual hallucenations to name a few. Instead of giving me treatment, he has done nothing at all. I'm not on a single medication now. I believe inmates and staff are trying to harm me, So I meet them with violence to protect myself.

103.   On 4-6-20, I tried once more to recieve help by letting a seperate staff member outside of Rockview that I've had PREA violations enacted on me. Who else but Mr. Byerlee is ordered to take my report. He is the one who spun the whole conspiracy theory of me trying to get a "Z-code" (single cell). I tell him generally that I've had multiple violations against me by multiple people in multiple places over several years. Some of these violations happened in SCI Greensburg and my county jail, as well as here at SCI Rockview. Mr. Byerlee purposely omitted these last parts and sabotaged my report by spinning this into his theory of getting a "Z-code." This prevented me from getting help and prevented investigators from believing me and doing a thourough investigation.

104.  As a result, Timothy Miller and Lt. Rutherford didn't look to hard at my investigation. It's impossible to prove an unspecific report like mine as "unfounded" (fabricated) because they never contacted my county jail and they couldn't have contacted S.C.I. Greensburg because it's been shut down for years. Furthurmore, this isn't the first time I've had PREA related problems in this prison.

P517

Part C Continued.

In 2016, I was removed from A-block twice by Unit manager Miller and in 2017 I had a PREA related problem with staff that outlined that inmates and staff alike harass me because they all think I'm gay.

105. On 6-24-20, Lt. Rutherford issued me a misconduct that details my PREA report. As a result of this, the misconduct (like all misconducts) was put on the DOC computer system for all C.O.'s to read. Naturally, the inmates find out as well. I have been subjected to harassment by both staff and inmates because this PREA report was made public via the misconduct on the DOC Computer. Recently, an inmate has come down to the RHU from population and told me via jailhouse sign language that people heard about the report and are waiting to harm me. The CO's, Administration, and medical have put my life in danger. I haven't left my cell in months for recreation or shower because of my torment and mental illnesses. The very people that I'm supposed to inform about all of this are the ones who caused it. They broke their policy when: Security didn't interview me; a nurse didn't examine me; they didn't monitor retaliation; protecting me from physical harm that'll surely ensue if I go to population; and punishing me for making an unspecified report. My report was supposed to be confidential. Professional trust has been broken at every level and is irreparable.

106. When I try to use the RHU "law library" because of it's location, all C.O.'s, workers, inmates, counselors, ect. are walking all around me. It's like I'm in a cage for everyone to yell at me and poke me with a stick.

Part C Continued!

The marks after "Unknown number of unknown Correctional officers" (Ie. ¹ ² ³ ⁴ ⁵ ⁶ ⁷) referr to C.o. Pollock, c.o. Showers, and c.o. Cummings. Plaintiff is unsure if they were all present for each violation but knows that they were there for most of them because they are the "Regulars" on the block. Sometimes all three together, sometimes just one or two.

There are numbers 1-7 on seven different instances named in the "Underlying claims" as well as in "legal claims."

This explains why defendants are not specifically named because Plaintiff doesn't want to present false info.

Pg.14

## IV. LEGAL CLAIM(S)

You are not required to make legal argument or cite any cases or statutes. However, state what constitutional rights, statutes, or laws you believe were violated by the above actions. If you intend to assert multiple claims, number and set forth each claim in separate paragraphs. Attach additional pages if needed.

Plaintif is claiming violations of his First Amendment rights, Fifth Amendment rights, Eighth Amendment rights, and Fourteenth Amendment rights given to him under the United States Constitution.

Plaintif reiterates paragraphs 1— from the previous section (III Statement of facts, Part C).

The following paragraph numbers will correspond with Part C of the previous section for the purpose of stating Claims for each violation. This is for the ease of understanding on such a lengthy complaint.

1. I'm claiming a violation of my Eighth Amendment rights to be free of unsafe conditions. The head of Activities, John Doe, failed to properly secure the weight plate storage racks to the floor, causing one to flip over on me and fracturing the fifth medatarsel on my right

## V. INJURY

Describe with specificity what injury, harm, or damages you suffered because of the events described above.

A fractured fifth medatarsel, A secondary exaserbated fractured fifth medatarsel, Permanent screws and metal plate on fifth

## VI. RELIEF

State exactly what you want the court to do for you. For example, you may be seeking money damages, you may want the court to order a defendant to do something or stop doing something, or you may be seeking both types of relief. If you are seeking monetary relief, state your request generally. Do not request a specific amount of money.

I am seeking nominal, compensatory, and punitive money damages. I am seeking injunctive relief in the folowing forms, 1. Bolt the weight plate storage racks to the floor.

## Legal Claims Continued

foot. The acting safety manager, D. Breese, failed to oversee the proper safety precautions upon the installation of the storage racks under his direct jurisdiction.

2.    I'm claiming a violation of my Eighth Amendment rights to be free from cruel and unusual punishment through Unsafe Conditions when acting safety manager, D. Breese, failed to fix the problem that he was clearly obligated to fix. I am also claiming Deliberate indifference by D. Breese for choosing to do nothing about the unsafe conditions that caused my injury and endangers others as well. I claim that this is another violation of my Eighth Amendment rights.

3.    I'm claiming a violation of my Eighth Amendment rights to be free from cruel and unusual punishment through Unsafe Conditions and Deliberate indifference when the Superintendent A&A facility manager, Mark Garman, and the chief grievance officer, Keri Moore, choose to not fix the problem with the weight racks despite having the power to do so.

5.    I'm claiming a violation of my Eighth Amendment rights to be through free from cruel and unusual punishment through Deliberate indifference, Sgt. Roberts, and other unknown Correctional officers who witnessed the orders of the Sgt, forced me to either hop on one foot (the other was in a non-load bearing cast) and crutches through ice and snow to get my tray or not eat at all.

6.    I'm claiming a violation of my Eighth Amendment rights to be free from cruel and unusual punishment through Deliberate indifference when the Unit Manager, S. Pasquale, failed to address the misconduct of Sgt. Roberts despite having the power to do so. He made no attempt to fix my plight regarding my

Legal Claims Continued

Obvious medical need.

7.   I'm claiming a violation of my Eighth Amendment rights to be free from cruel and unusual punishment through Deliberate indifference when the Superintendent AKA facility manager, Mark Garman, choose to not fix my problem or staff's misconduct that he has the power to correct.

8.   I'm claiming a violation of my Eighth Amendment rights to be free from cruel and unusual punishment through Deliberate indifference when the chief hearing examiner, Keri Moore, choose to not correct the problem or address staff misconduct.

9.   I'm claiming violations of my Eighth Amendment rights to be free from cruel and unusual punishment through Deliberate indifference and for Denial or Delay of access to medical personal because Sgt. Roberts denied my request to go to medical due to severe pain the crutches were causing me and because the crutches were rubbing the skin off of my hands. An unknown number of Unknown Correctional officers were in his presence and did nothing to report Robert's misconduct or correct it.

10.   I'm claiming a violation of my Eighth Amendment rights to be free from cruel and unusual punishment through Deliberate indifference when the Unit Manager S. Pasquale, did nothing to correct staff's misconduct or to alter procedures to accomodate serious medical needs.

11.   I'm claiming a violation of my Eighth Amendment rights to be free from cruel and unusual punishment through Deliberate indifference when the Superintendent AKA facility manager, Mark Garman, failed to properly investigate staff misconduct, He showed

Pg 2

Legal Claims Continued.

Deliberate indifference when he didn't bother to read my original claims, to fix the problem, or address staff misconduct.

12. I'm claiming a violation of my Eighth Amendment rights to be free from cruel and unusual punishment through Deliberate indifference when the chief grievance officer, Keri Moore, choose to not address my appeal, staff misconduct, or offer a resolution to my ongoing problems.

16-17 I'm claiming violations to my Eighth Amendment rights to be free from cruel and unusual punishment through Deliberate indifference, Unsafe conditions, and Grossly incompetent medical treatment; I'm also claiming a violation of my Fourteenth Amendment rights of Due process and Equal protection when Sgt. Drexler (whom was in the company of other unknown correctional officers) removed my wheelchair pusher and ~~preventing~~ prohibited him from helping me in the future. This forced me to become a public spectacle of humiliation because I had to hop on one foot (the other was in a non-load bearing cast) up and down stairs while using my cane to pull my wheelchair behind me. I was the only one in Rockview at that time without a pusher.

18-19 I'm claiming violations of my Eighth Amendment rights to be free from cruel and unusual punishment through Deliberate indifference, Unsafe conditions, and grossly incompetent medical treatment As well as a violation of my Fourteenth Amendment rights under Due process and Equal protection when Sgt. Roberts (whom was in the company of other unknown correctional officers) continued the "pusher ban" the next day. Because I had to traverse up and down steps on my own, I exacerbated my fractured metatarsal to the point of needing permanent hardware surgically installed in my

Legal Claims continued

foot when I inevitably fell on the steps. The unknown officers did not try to stop the mistreatment or report it.

20. I'm claiming a violation of my Eighth Amendment rights to be free from cruel and unusual punishment through Deliberate indifference when the major of unit management, Major H. Halleman, failed to address the "campaine of harassment" from staff and did nothing to solve the problem.

21. I'm claiming a violation of my Eighth Amendment rights to be free from cruel and unusual punishment through Deliberate indifference when the Superintendent AKA facility manager, Mark Garman, chooses not to address the problem or the "campaine of harassment."

22. I'm claiming a violation of my Eighth Amendment rights to be free from cruel and unusual punishment through Deliberate indifference when the chief grievance officer, Keri Moore, failed to address staff misconduct or the ongoing "campaine of harassment."

27. I'm claiming of my Eighth Amendment rights to be free from cruel and unusual punishment through Deliberate indifference and a violation of my Fourteenth Amendment rights to Due process and Equal protection when Sgt. Roberts denied me a bag to cover my cast for bathing purposes. Unknown Correctional Officers[4] did nothing to stop the mistreatment or report it. To my knowledge, no other inmates had problems getting bags to cover their casts for bathing purposes.

29. I'm claiming a violation of my Eighth Amendment rights to be free from cruel and unusual punishment through Deliberate indifference when the unit manager, S. Pasquale, failed to address staff misconduct or stop the ongoing "campaine of harassment."

Legal Claims Continued

30.   I'm claiming a violation of my Eighth Amendment rights to be free from cruel and unusual punishment through Deliberate indifference when the superintendent AKA facility manager, Mark Garman, failed to properly read the complaint which indicates that he doesn't care about Staff's misconduct or the "campaine of harassment" against me.

32.   I'm claiming a violation of my Eighth Amendment rights to be free from cruel and unusual punishment through Deliberate indifference when the superintendent AKA facility manager Mark Garman, once again chooses not to address Staff misconduct or the ongoing "campaine of harassment" against in spite of his appeal responce being remanded back down to him by the chief grievance officer, Keri Moore.

34.   I'm claiming a violation of my Eighth Amendment rights to be free from cruel and unusual punishment through Deliberate indifference when my final appeal was referred to the Bureau of Health Care Services by the chief grievance officer, Keri Moore, and Unknown employees of the Bureau of Health Care Services failed to correct Staff's misconduct towards an inmate with obvious medical needs.

37.   I'm claiming violations of my Eighth Amendment rights to be free from cruel and unusual punishment through Deliberate indifference, Denial or Delay in access to medical personel, and grossly incompetent medical treatment when Sgt. Roberts (whom was in the presence of other unknown correctional officers) denied my request to go to medical to get a new splint. I even showed him my bare foot with the open wound from sergery. I had

p35

legal claims continued:

Surgery just five days ago at this time. The unknown officers did nothing to help me or stop the passive aggressive "campaine of harassment" against my by the Sgt.

40-41  I'm claiming a violation of my Eighth Amendment rights to be free from cruel and unusual punishment through Deliberate indifference when the Deputy Superintendent of Centralized Services, Morris L. Houser, doesn't fix the issue at hand or address the ongoing "campaine of harassment" by staff. I'm also claiming a violation of my Fourteenth Amendment rights to due process and equal protection when the unit manager S. Pasquale, admits to bags not being issued to me and being forced to shower with no cover on my cast when in other reports he says otherwise. It also came into the light that security staff said it is never an issue to issue bags to cover a cast. This contradicts S. Pasquale's other reports. CHCA, Richard Ellers, and Dr. Dancha also did nothing to correct this problem.

42.  I'm claiming a violation of my Eighth Amendment rights to be free from cruel and unusual punishment through Deliberate indifference when the Superintendent AKA facility manager, Mark Garman, failed to address the main point of the grievance (denial of medical services) and doesn't address the ongoing "campaine of harassment" by staff.

44.  I'm claiming a violation of my Eighth Amendment rights to be free from cruel and unusual punishment through Deliberate indifference when unknown employees of the Bureau of Health Care services fails to correct ongoing mistreatment by staff or make any changes that makes it easier for people

Pg 6

Legal Claims Continued:

with Serious medical needs to get help.

45. I'm claiming violations to my Eighth Amendment rights to be free from cruel and unusual punishment through Deliberate indifference and grossly incompetent medical treatment when Sgt. Roberts (whom was in the company of other unknown correctional officers)[6] again denied my request for a bag to cover my cast even when informed that the last time he denied me, it resulted in an emergency trip to the outside hospital. The unknown officers did nothing to help me or report the Sgt.'s ongoing misconduct against me. I'm also claiming a violation of my Fourteenth Amendment rights to due process and equal protection because other inmates don't have trouble getting bags to cover their casts.

47. I'm claiming a violation of my Eighth Amendment rights to be free from cruel and unusual punishment through Deliberate indifference when the unit manager, S. Pasquale, failed to fix the problem or intervene with the ongoing "campaine of harassment" against me by Staff under his command. I'm also claiming a violation of my Fourteenth Amendment rights to due process and equal protection for unit manager, S. Pasquale's, retaliation against me for filing grievances on his officers and for his lying on official documents. In his responce he says that bags were not issued because for "security reasons" Staff were directed to not give bags to inmates. Deputy Superintendent, Morris L. Houser, previously uncovered that security gave no such order. Also 1st Amendment violation

48. I'm claiming a violation to my Eighth Amendment rights to be free from cruel and unusual punishment through Deliberate indifference when the superintendent AKA facility manager,

Legal Claims Continued:

Mark Garman, admits he has problems with staff giving me bags to cover my cost.

50.  I'm claiming a violation of my Eighth Amendment rights to be free from cruel and unusual punishment through Deliberate indifference when, in his remanded responce, the superintendent AKA facility manager, Mark Garman, doesn't fix my ongoing medical mistreatment by staff under his command or the "campaine of harassment." Instead, he blames me.

51.  I'm claiming a violation of my Eighth Amendment rights to be free from cruel and unusual punishment through Deliberate indifference when the chief grievance officer, Keri Moore, does nothing to address the ongoing medical problems I'm having with staff or the "campaine of harassment" against me.

54.  I'm claiming a violation of my Fourteenth Amendment rights to due process and equal protection when Sgt. Roberts retaliated against me by going above and beyond the normal call of duty to aggrevate his misconduct (DC-141 he wrote against me) against me to ensure that I get the severest punishment possible. Other inmates that recieved DC-141 misconducts with the same charges were seen by the unit manager (informal hearing) and don't get "hole" time whereas I got a formal hearing and twenty days "hole" time. Also 1st Amendment violation.

58.  I'm claiming a violation of my Fourteenth Amendment rights to due process and equal protection when two unknown "Shakedown" officers wantonly and maliciously destroyed my cell. In doing so, they damaged irreplaceable photos and destroyed a new commissary towel. I claim retaliation.

Legal Claims Continued:

The unknown Security Lt. is responsible for sending these officers to
do this shakedown upon my knowledge and belief. Also claiming a 1st Amend, violation.
59. I'm claiming a violation of my fourteenth Amendment
rights to due process and equal protection when the grievance
Coordinator, N. Paul, told Sgt. Roberts about my grievances
before they were filed and thereby giving him ways to retaliate
against me through third party officers. Also a 1st Amend. violation.
60. I'm claiming a violation of my fourteenth Amendment rights
to due process and equal protection and a violation of my Eighth
Amendment rights to be free from cruel and unusual punishment
through Deliberate indifference when the Security Captain, R. Vance,
failed to properly investigate his officers or address the obvious
evidence of retaliation against my by Staff under his controll. He falsified
official documents and did nothing to stop the "Campeane of harassment"
against me by Staff. Also claiming a 1st Amend. violation.
61. I'm claiming a violation of my Eighth Amendment rights
to be free from cruel and unusual punishment through Deliberate
indifference and a violation of my Fourteenth Amendment rights to due
process and equal protection and a violation of my 1st Amend rights for
retaliation when the superintendent, Mark Garman, didn't correct staff
misconduct or the "Campeane of harassment" against me.
62. I'm claiming a violation of my Eighth Amendment rights to
be free from cruel and unusual punishment through Deliberate
indifference and a violation of my 14th Amend. rights to due process and
equal protection and a violation of my 1st Amend rights when the Chief
grievance officer, keri moore, didn't act on my behalf to stop the "campeane
of harassment," and retaliation against me by Rockview Staff. pg4

Legal Claims continued:

65. I'm claiming a violation of my Fourteenth Amendment rights to due process and equal protection when Unknown Correctional officers purposely delayed calling me for a visit, effectively cutting my visit to 2 hourse from 5½. They did out of retaliation for filing multiple grievances on fellow Staff members. Also claiming a 1st Amend. violation.

69. I'm claiming a violation of my 14th Ammdment rights and a violation of my 1st Amendment rights when Lt. R. Potts failed to correct the misconduct of the Unknown Correctional officers on my block, lied on official documents, and failed to do a full and meaningful investigation. He was deliberately indifferent.

71. I'm claiming a violation of my Fourteenth Amendment rights to due process and equal protection when the Superintendent AKA facility manager, Mark Garman, fails to correct Staff's misconduct so that I'm treated the same as everyone else and stopping the ongoing "campaine of harassment" against me.

72. I'm claiming a violation of my Fourteenth Amendment rights to due process and equal protection when the Chief grievance officer, keri Moore, fails to address the ongoing "campaine of harassment" against me by by Rockview Staff.

75-76 I'm claiming violations of my Eighth Amendment rights to be free from cruel and unusual punishment through Deliberate indifference, Denial or Delay in access to medical personell, failure to inquire into facts necessary to make a medical judgement, grossly incompetent medical treatment, and unsafe conditions when an unknown medical staff member at Rockview made me wait for two days in my cell before seeing me after I fell out of the top bunk (I was forced to

PG 10

## Legal Claims Continued:

Utilize the top bunk by staff) and injured my leg causing my leg (from the knee down) to swell. The incident came from complications with having implanted hardware in my foot.

80.  I'm claiming violations to my Eighth Amendment rights to be free from cruel and unusual punishment through Deliberate indifference, grossly incompetent medical treatment and being forced to live in unsafe conditions when the medical staff member, Ethan Ernsh, gave no medical treatment and sent me back to my cell with no changes to my bedding status to prevent further injury. I was sent back into the same situation that caused my injury.

82.  I'm claiming violations to my Eighth Amendment rights to be free from cruel and unusual punishment through Deliberate indifference After I wrote a letter (sent with "certified" postage) To: Superintendent Mark Garman, Deputy superintendent of centralized services Morris L. Houser, CHCA Richard Ellers, EDS Tabb Bickle, and the secretary of the DOC John Wetzel and none of them did anything to correct my bedding status to prevent further injury. Dr. Preston also failed to fix the problem after being notified via request slip.

88.  I'm claiming a violation of my Eighth Amendment rights to be free from cruel and unusual punishment through Deliberate indifference when unknown employees of the Bureau of Health Care Services didn't correct my bedding status to prevent further injury.

90-96  I'm claiming a violation of my First Amendment rights against unlawful restriction of speech, My Fifth

Legal Claims continued:

Amendment rights to Due process, and my fourteenth.
Amendment rights to Due process and equal protection when
an Unknown Rockview employee of the mail room rejected
my mail Without notifying me (a violation of DC-ADM
803 Section 1, Part 2 A) or my wife, Brenda Marinos.

97.   I'm claiming a violation of my First Amendment
rights against unlawful restriction of speech when the mail
Supervisor, S. Boone, failed to correct his staff's misconduct and
didn't give me an opportunity to contest the disposition of my
rejected mail thereby letting it get destroyed. I'm also claiming
a violation of my fifth Amendment rights to Due process and
my Fourteenth Amendment rights to Due process and equal
protection.

99.   I'm claiming a violation of my First Amendment rights
against unlawful restriction of speech, Fifth Amendment rights
to Due process, and my Fourteenth Amendment rights to Due
process and equal protection when the superintendent AKA
facility manager, Mark Garman, failed to correct his staff's
misconduct and let my mail be destroyed without giving me a
chance to contest it.

100.   I'm claiming a violation of my First Amendment
rights against unlawful restriction of speech, my Fifth
Amendment rights to Due process, and my Fourteenth Amendment
rights to Due process and equal protection when the chief
grievance officer, Keri Moore, did nothing to fix the problem
with my rejected mail that was and still is denied to me
without any chance to contest it despite having the

Legal claims continued:

power to do so.

103. I'm claiming a violation of my fourteenth Amendment rights to Due process and equal protection when C. Byerlee sabotaged my PREA report that ultimately resulted in it being made public and endangering my life.

105. I'm claiming a violation of my fourteenth Amendment rights to Due process and equal protection and I'm claiming a violation of my Eighth Amendment rights to be free from cruel and unusual punishment when Timothy Miller and Lt. Rutherford concluded that, based on information given, my PREA report was fabricated and issued me a misconduct. All misconducts are entered into the DOC computer and thus made it public to all C.O.'S. Inmates found out as well and how IF I go to population, my life is in danger.

Plaintiff Asks that the violations of his 1st, 5th, 6th, 8th, and 14th amendment violations be settled by the court as it see's fit because Plaintiff has no law expertise/experience and relied solely on his personal understanding of his constitutional Rights.

The marks $^{1234567}$ after "Unknown number of unknown Correctional officers" is reffering to C.O. Pollock, C.O. Shovers, and C.O. Cummings. Plaintiff is unsure of what days they were present but knows they are the "Regulars" on the block, and were present.

pg 13

Injury continued:

meda tarsel; missing mail; destroyed commissary towel; damaged photos; Public humiliation; Physical, mental, and emotional suffering; Unecessary pain and suffering; Retaliation from all genre's of staff; threats to my life when I'm released to population

Relief continued:

2. A change in Policy mandating a wheelchair pusher for every person with a wheelchair.

3. A change in Policy that Automatically allows people with splints or casts to be issued bags as needed for bathing purposes.

4. A change in Policy that makes getting medical care swifter and easier for people with obvious and serious medical needs.

5. A change in Policy Affording people with severe mobility problems (like crutches) to get their trays on the housing unit when weather is inclimate. (snow + ice)

6. A change in Policy that mandates body cameras for any officer entering into inmate's cells as a job. (like shakedown officers) (RHU officers)

7. A change in policy that mandates bottom bunk status to inmates with surgically implanted hardware in their hands, arms, torso, legs, and feet.

I am seeking to be reimbursed for filing fee's, postage, copies, attorny's fee's (if applicable), and any other legal related expenses as well as any and all other relief the court deems fit and acceptable.

## VII. SIGNATURE

By signing this complaint, you represent to the court that the facts alleged are true to the best of your knowledge and are supported by evidence, that those facts show a violation of law, and that you are not filing this complaint to harass another person or for any other improper purpose.

Local Rule of Court 83.18 requires *pro se* plaintiffs to keep the court informed of their current address. If your address changes while your lawsuit is being litigated, you must immediately inform the court of the change in writing. By signing and submitting the complaint form, you agree to provide the Clerk's Office with any changes to your address where case-related papers may be served, and you acknowledge that your failure to keep a current address on file with the Clerk's Office may result in dismissal of your case.

_____
Signature of Plaintiff

8 - 3 - 20
Date

Smart Communications
PA SCI Rockview
Shawn Simms JP4037
PO Box 33028
St Petersburg, FL 33733

RECEIVED
SCRANTON

AUG 10 2020

PER _____

PRIORITY
★ MAIL ★

TRACKED
★ ★ ★
INSURED
★

UNITED STATES
POSTAL SERVICE®

For Domestic and International Use      Label 107R, May 2014

Office of the

United States Distri

Middle District o

William J. Nealon Federal BL

235 North Washi

Scranton, PA 185

1 of 2      Legal