# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHAWN M. SIMMS,** | : | |
| **Plaintiffs** | : | **CIVIL ACTION NO. 3:20-1411** |
| **v.** | : | **(JUDGE MANNION)** |
| **JOHN WETZEL,** *et al.*, | : | |
| **Defendants** | : | |

## MEMORANDUM

## I. Background

Plaintiff, Shawn M. Simms, an inmate currently confined at the Benner Township State Correctional Institution, Bellefonte, Pennsylvania, filed the above captioned civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1, complaint). The matter is proceeding via a second amended complaint. (Doc. 137). The named Defendants are Dr. Andrew Dancha, Physician Assistant Ethan Ernst, and Dr. Vernon Preston ("Medical Defendants") and Sgt. Drexler, C.O. Cummings, C.O. Pollock, C.O. Showers, and Sgt. Roberts ("Corrections Defendants"). Id. Plaintiff's second amended complaint challenges, *inter alia*, the medical care he received regarding an injury to his right foot. Id. Plaintiff seeks compensatory and punitive damages for the Medical Defendants alleged deliberate indifference to Plaintiff's "severe pain, exacerbated fracture in [his] 5th metatarsal surgery." (Doc. 137).

Presently before the Court is the Medical Defendants' motion and supplemental motion for summary judgment. (Docs. 146, 201). The motions has been fully briefed and are ripe for disposition. For the reasons that follow, the Court will grant the Medical Defendants' motion and supplemental motion for summary judgment.

## II. Standard of Review

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at

257; Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Co., 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential

element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. White, 826 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. Id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-CV-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

- 4 -

III.   **Statement of Undisputed Facts**

On January 17, 2019, Plaintiff was seen in medical by complaining that 600 pounds of weight fell on his right foot the prior afternoon while working out in the gym. (Doc. 175-6, 175-7, Plaintiff's Medical Records). He reported that his right foot was painful when he moved it. Id. He stated he took some Motrin for pain. Id. Plaintiff was given a cane for walking support and Motrin samples. Id. He was excused from work and an X-ray of his right foot was ordered. Id.

On January 18, 2019, Plaintiff's orthopedic appointment was approved by Dr. Dancha. Id. Plaintiff was seen by an outside orthopedic that day at 12:45 pm, where it was determined that the X-rays showed a right displaced base of the fifth metatarsal fracture. Id. Plaintiff was given crutches. Id.

January 22, 2019, at 3:12 pm, Plaintiff was again seen in medical, stating that he feels he may have re-injured his right food and wanted to make sure alignment is still okay. Id. Plaintiff's crutches were discontinued, and Plaintiff was issued a wheelchair. Id. An X-ray was ordered as well as a follow-up with orthopedics. Id.

On January 23, 2019, at 10:12 am, Plaintiff was seen for an orthopedic appointment. Id. He stated that he may have re-broken the foot when he "fell and put a lot of weight on it and felt it pop." Id. X-rays show significant

worsening of fracture with increased displacement in comparison to initial x-rays. Id. He was placed in a short cast and was referred back to orthopedics to determine if fracture needs to be re-set. Id.

On January 25, 2019, Patient was placed on medline for follow up fracture. Id. It was noted that Plaintiff was seen earlier this week and sent to orthopedic for re-injury. Id. He is scheduled for surgery next week. Id.

On February 1, 2019, Plaintiff was operated on at Mount Nittany Medical Center. Id. The operative note dictated by Dr. Barter stated that Plaintiff underwent an open reduction internal fixation, right displaced base of the 5th metatarsal fracture. Id. Plaintiff was given discharge instructions and told to leave his cast in place until otherwise instructed and to keep the cast dry. Id. Plaintiff returned from MNMC after having same day surgery to his right foot 5th metatarsal fracture. Id. He was using a wheelchair. Id. He was placed in the infirmary for twenty-three hour observation. Id.

On February 2, 2019, Plaintiff was seen by PA Reisinger. Id. He denied much pain. Id. He was able to move his leg a little against gravity but does not have full range of motion yet. Id. It was noted that he can bare full weight on left leg for self transfers. Id. He was cleared to return to block with Tylenol prn and T3 ordered for two more days. Id. Follow up with orthopedics as directed. Id.

On February 6, 2019, Plaintiff reported to medical that security would not allow him to have a plastic bag in order to wrap his cast in the shower so he managed the best he could. Id. He "notes [the case] got soaked so he removed the cast." Id. Plaintiff's case was discussed with Dr. Dancha, who is in agreement to send the patient back to orthopedics to have casting performed. Id. Dr. Dancha personally spoke to security staff two days ago who stated that it is never an issue to provide a plastic bag with cast in place in order to shower, so not sure where the misunderstanding or problem is occurring. Id. Dr. Dancha told patient he needs to be compliant with medical recommendation as this will be his third trip to orthopedics in three weeks. Id.  On February 6, 2019, Plaintiff was seen by the Orthopedic Office for a recast. Id.

On February 15, 2019, Plaintiff was seen by PA Ernst. Id. Plaintiff claimed that security is still not allowing him to obtain a bag to shower and recently slipped when coming out the shower and would like an X-ray to make sure he did not hurt his foot. Id. It was noted that medical would not proceed with x-rays because he Plaintiff has an orthopedic follow up today, and will await evaluation and recommendations. Id.  PA Ernst ordered a garbage bag as needed for Simms. Id. At Plaintiff's orthopedic follow up that same day, Plaintiff's sutures were removed, and a follow up was ordered in 3-4 weeks for X-rays when out of cast. Id.

On March 7, 2019, a nursing progress note was added to Plaintiff's medical record, stating that Plaintiff was witnessed by CO Bivens to ambulate on both feet without crutches approximately 25-30 yards then downstairs for a visit. Id. The note assessed Plaintiff as is non-compliant with orders from orthopedic doctor. Id.

March 14, 2019, Plaintiff was seen for his orthopedic follow up. Id. It was noted that the X-rays show well aligned and healing 5th metatarsal fracture and Plaintiff was permitted to take his boot off for bathing and sleeping. Id. A follow up was ordered in four weeks for X-rays. Id.

On March 25, 2019, Plaintiff's cane was returned and on March 28, 2019, Plaintiff received an orthopedic boot. Id.

On April 2, 2019, a Mental Health Contact Note reveals that Plaintiff was worried about being made to live in a dorm setting, stating that he "is not interested in living in the dorms due to negative experiences." Id.

On April 24, 2019, Plaintiff begin to wean from boot to a regular shoe, X-rays taken noted a complete healing of right 5th Metatarsal. Id.

April 25, 2019, consult note from surgeon states X-rays show everything is well aligned and healed fracture of the 5th metatarsal, no tenderness. Id. Two week weaning protocol, no running or jumping for four weeks. Id. Plaintiff may return to regular work. Id. When the report was received it was signed and reviewed by Dr. Preston. Id.

At a May 9, 2019, at a medical follow up, Plaintiff stated he was fine and building strength in his toes. Id. It was noted that he saw orthopedics ten days ago and x-rays were normal. Id. Orthopedics recommended that patient return to regular activities in four weeks. Id. No acute distress was noted, right foot appears normal, and toes with full range of motion. Id. Plaintiff was scheduled for PT on May 22, 2019. Id.

On May 22, 2019, it was noted that PT no follow up is needed. Id. Plaintiff had right ankle full range of motion, strength 5/5; normal gait, 5th toe functional range of motion, doing well. Id. Thus, it was determined to discontinue physical therapy. Id.

On June 7, 2019, Plaintiff was cleared for placement in the RHU (Restricted Housing Unit) for possession of contraband. Id. On this date, Plaintiff turned in his boot because it is no longer needed. Id.

On June 11, 2019, Plaintiff saw the orthopedist and it was recommended that he return to work but no running or jumping for four weeks. Id. At this time, Plaintiff stating that he needed his bottom bunk renewed as he hurt his foot while climbing the ladder. Id. Plaintiff bottom bunk status was extended, and an X-ray follow up as needed. Id.

On June 12, 2019, a follow up X-ray of Plaintiff's right foot was ordered. Id.

On June 14, 2019, Plaintiff requested an X-ray of his foot to evaluate the hardware. Id. He was told one was already ordered on June 12, 2019. Id.

On June 17, 2019, Plaintiff was attempting to be seen for a follow up visit, but because there was not enough security staff to take him out of cell, his visit had to be rescheduled. Id.

On June 21, 2019, Plaintiff presented to medical with "pinpoint tenderness at old fracture site." Id. He was seen by PA Ernst. Id. It was recommended that Plaintiff continue PT exercises and using NSAID's. Id. Orthopedics recommended that he participate in activity as tolerated. Id. X-rays showed intact hardware and no fracture. Id. Plaintiff had full range of motion in his foot and full strength of 5/5. Id. He was told to continue his previous PT exercises. Id.

On September 6, 2019, Plaintiff presented to medical and was seen by PA Ernst. Id. PA Ernst entered the following note:

> 31 y/o male with IED, anxiety and BPD presents with right foot pain. Notes he was getting off top bunk when he got a hot poker sensation on the lateral aspect of right foot and jumped off ladder landing on foot due to the pain. Notes pain with pressure and slowly increasing swelling of right ankle.
>
> Chart review notes patent lower bunk ran out less than a month ago. Back in June when his lower bunk ran out patient came down stating he hurt himself on ladder as well where lower bunk was reinstated, but had no hardware issues. Patient did have

- 10 -

> ORIF of right 5th metatarsal fracture back in February and is back to full functionality at this time per orthopedics.
>
> Patient in past has shown to do self-destructive behavior by getting splint wet and removing case on his own which results in having to have surgical revision.

Id. PA Ernst observed that Plaintiff's gait was steady and without ataxia; no edema appreciated of right foot and full range of motion of toes. Id. PA Ernst ordered an X-ray of the right foot and ankle. Id. PA Ernst noted that a "personal review of the X-ray today does not show malalignment, acute fracture" and the "hardware looks to be intact." Id. PA Ernst concluded with the following note:

> Patient was advised of imaging. Can use Motrin as needed for pain. After this recommendation, patient states, "That's it." Then requested lower bunk status. Stated it is not medically necessary at this time based on imaging and examination. He then stated, "You know I am going to be back down here, right?" Given this interaction, it seems that patient is looking for secondary gain of lower bunk status at this time. Advised patient that SMD is in agreement that lower bunk is not medically indicated at this time after review of case with him. Advised to follow up as needed.

Id.

## IV. Discussion

### A. Eighth Amendment Medical Claim

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden

Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id.

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment ..." Estelle v. Gamble, 429 U.S. 97, 106 (1976). For instance, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Id., 429 U.S. at 107. "[A]s long as a physician exercises professional judgment his behavior will not

violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a §1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

Further, a prison administrator cannot be found deliberately indifferent under the Eighth Amendment because he or she fails to respond to the medical complaints of an inmate being treated by a prison physician, or because, as non-physicians, they defer to the medical judgment of the inmate's treating physicians. Id., 991 F.2d at 69. If, however, non-medical prison personnel had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," liability may be imposed. Spruill, 372 F.3d 236.

A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. Farmer v. Carlson, 685

- 13 -

F. Supp. 1335, 1339 (M.D. Pa. 1988). See McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976).

Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. Little v. Lycoming County, 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. Farmer v. Carlson, 685 F. Supp. at 1339.

Here, the record evidence demonstrates that Plaintiff received substantial medical attention, and that the attention Plaintiff received lacks that requisite deliberate indifference to support a Section 1983 claim. Specifically, Plaintiff was immediately evaluated and treated after injuring his right foot. Additionally, within a seven month span after his injury, Plaintiff was evaluated approximately twenty-one times by prison medical staff, outside orthopedics and outside hospitals. In response to this injury, Plaintiff received numerous X-rays, various pain medications, physical therapy, a medical lay-in, an approval for surgery, and a wheelchair, cane, crunches, and a lower bunk status, to accommodate him. There is no indication, whatsoever, that at any time medical treatment was denied or intentionally withheld.

- 14 -

At best, Plaintiff's allegations demonstrate Plaintiff's disagreement with the type of treatment rendered and, most specifically, with the medical department's termination of his lower bunk status.[1] However, his mere disagreement with the course of action that the medical department took based on the symptoms he presented, is not enough to state a §1983 claim. Sample v. Diecks, 885 F.2d 1099, 1109 (3d Cir. 1989) (citing Estelle, 429 U.S. at 105–06 (in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind) ). This is particularly so in light of the fact that there are no facts set forth in Plaintiff's complaint or attached exhibits that demonstrate that any named Defendant intentionally withheld medical treatment from Plaintiff in order to inflict pain or harm upon Plaintiff. Farmer, 511 U.S. at 837; Rouser, 12 F.3d at 197. Thus, the allegations in the Plaintiff's complaint amount to nothing more than Plaintiff's subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison. Where, as here, an inmate is provided with medical care and the dispute is over the adequacy

---

[1] While the Court is cognizant that refusal to honor bottom bunk and floor passes can be interpreted as deliberate indifference to the need for medical treatment prescribed by prison authorities, see Hemingway v. Gosa, No. 1:19-CV-583, 2019 WL 3857856, at *7 (M.D. Pa. Aug. 16, 2019), the record before this Court more than amply demonstrates that Plaintiff's right foot had healed and there was no longer a medical need for a bottom bunk.

of that care, an Eighth Amendment claim does not exist. Nottingham v. Peoria, 709 F. Supp. 542, 547 (M.D. Pa. 1988). At most, the allegations in the complaint only rise to the level of mere negligence. As simple negligence cannot serve as a predicate to liability under §1983, Hudson v. Palmer, 468 U.S. 517 (1984), Plaintiff's civil rights complaint fails to articulate an arguable claim against any of the named Defendants. See White, 897 F.2d at 108-110. As such, the Medical Defendants' motion for summary judgment will be granted as to Plaintiff's Eighth Amendment medical deliberate indifference claim.

**B. State Law Claims**

The Court declines to exercise supplemental jurisdiction over any state law claims. When a district court has dismissed all claims over which it had original jurisdiction, the Court may decline to exercise supplemental jurisdiction over the pendent state law claims. See 28 U.S.C. §1367(c)(3). The Court's decision regarding the exercise of supplemental jurisdiction is one that should be based on "the values of judicial economy, convenience, fairness, and comity." See Carnegie Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). Ordinarily, when all federal claims have been dismissed and only state law claims remain, the balance of these factors indicates that the remaining claims properly belong in state court. See id. In the absence of a viable federal claim and finding nothing to distinguish this matter from the

ordinary case, the Court finds that the balance of factors in this case "point[s] toward declining to exercise jurisdiction over the remaining state law claims." See id. at 350 n.7. Accordingly, the Court having granted the Medical Defendants' motion for summary judgment on Plaintiff's Eighth Amendment deliberate indifference claims, will dismiss Plaintiff's state law claims of profession negligence against Defendants pursuant to 28 U.S.C. §1367(c)(3).

## V.   CONCLUSION

For the reasons set forth above, the Court will grant the Medical Defendants' motions to dismiss and will close the above captioned action.

An appropriate order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: April 4, 2023**
20-1411-02

- 17 -